IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARDNER BRADLEY,**

       **Plaintiff,**

**v.**                                     **Civil Action No. 3:07cv112**
                                               **(Judge Bailey)**

**GENERAL COUNSEL, KIM WHITE,**
**JOE DRIVER AND MR. HOWELL,**

       **Defendants.**

**PRELIMINARY REVIEW AND REPORT AND RECOMMENDATION**

On August 23, 2007, the *pro se* plaintiff initiated this action by filing a Petition Under Title 42 U.S.C. Section 1983. On October 5, 2007, the plaintiff filed a document titled "Petition Under Title 42 USC Section 1997e, Prison Administrative Remedy to Exhaust PLRA and Motion to Revoke Certification of U.S. Attorney General Counsel Office Approval of Federal Bureau of Prisons Grievance System Based on the Intentional Neglect to Adhere to Minimum Standards." On that same date, the plaintiff filed another document, this one titled "FRCP-Rule 7. Motion for the Supplemental of Claims to be Added With Original Complaint Before Defendant(s) Files a Reply in the Civil Action Case."

On October 11, 2007, the plaintiff was granted permission to proceed as a pauper and was assessed the $350 filing fee. However, the plaintiff was not required to pay an initial partial filing fee. Accordingly, this case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C.§§ 1915(e) and 1915A.

**I.**    **Standard of Review**

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## II. The Complaint

In the complaint, the plaintiff asserts that on August 7, 2006, he was placed in the Special Housing Unit ("SHU") at USP-Hazelton on administrative detention status for threat assessment. On September 30, 2006, the plaintiff was informed that he was being released back into the general population.

On November 30, 2006, the plaintiff was transferred to USP-McCreary in Kentucky. Upon arrival, the plaintiff was placed in the SHU as a holdover inmate. On May 31, 2007, the plaintiff

---

[1] Id. at 327.

asserts that he was told by defendant Howell that he would remain in the USP-McCreary SHU if he continued to fail to answer questions regarding the threat assessment investigation that commenced at USP-Hazelton.

In June 26, 2007, the plaintiff was returned to USP-Hazelton. Upon his arrival, the plaintiff was again placed in the SHU pending threat assessment investigation. On July 22, 2007, the plaintiff was informed that he cannot return to the general population because another inmate wants to kill him.

The plaintiff asserts that he attempted to exhaust his administrative remedies with regard to his placement and treatment in the SHU, but that the defendants failed to respond to his requests. Based on this factual and procedural history, the plaintiff states the following grounds for relief in his complaint:

(1) denial of due process by denying plaintiff housed in administrative detention status a segregation review hearing every 30 days as provided by BOP Policy Statement (PS) 5270.07;

(2) denial of due process and intentional failure to adhere to PS 7331.04 by defining holdover inmates as U.S. Marshal prisoners, whereby intentionally misclassifying inmates in the SHU to deprive administrative detention status so as to deny classification program review and custody review;

(3) denial of due process and intentional failure to adhere to PS 1330.13 by BOP officials in failing to respond to administrative grievances at each level of the process, whereby rendering the administrative grievance process futile; and

(4) cruel and unusual punishment by BOP officials in discriminating against the plaintiff in his housing assignment of administrative detention status for over a year in the SHU.

### III. The Plaintiff's Supplemental Filings

On October 5, 2007, the plaintiff filed two supplemental documents. The first is a petition related to the exhaustion of administrative remedies. See dckt. 11. In the petition, the plaintiff asserts that since the filing of this case, mailroom workers have opened his legal mail, his unit counselor has failed to provide him with ink, pens, paper, envelopes and stamp for use in pursuing this case, the staff psychologist has neglected his complaints about conditions in the SHU, and that his legal property has been confiscated and improperly withheld. The plaintiff further asserts that he has attempted to grieve these issues in the Bureau of Prison's administrative remedy program, but that his requests have been ignored. In addition, the plaintiff asserts that of the grievances he filed related to this case, both the Mid-Atlantic Regional Office and the Office of General Counsel have failed to respond to those requests. The plaintiff claims these and other actions of staff are motivated by the fact that the plaintiff testified against a BOP employee in a criminal case before this court, United States v. Palmer, 2:06cr22. Therefore, the plaintiff asserts that the BOP has failed to adhere to the minimum standards of its own grievance process making such a process futile for the plaintiff and requests that the Court notify the Attorney General's Office about these allegations.

In his second supplemental document (dckt. 12), the plaintiff requests permission to supplement his complaint with additional claims under 42 U.S.C. § 1997e "for exhaustion of PLRA based upon the intentional neglect by BOP official(s) to adhere to the minimum standards of the prison administrative remedy [program]." The plaintiff again asserts that BOP officials have hindered his ability to exhaust his administrative remedies by failing to respond to his grievances, and that the Attorney General's Office should be notified of such behavior. In addition, the plaintiff asserts that the Court should issue a preliminary injunction revoking the BOP grievance procedure.

## IV. Analysis

### A. Claims Under § 1983

Title 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Accordingly, by its terms, § 1983 applies only to state actors and has no application in this case, a case against a federal agency and its employees. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (a claim for relief under § 1983 may be made only against persons who acted under color of *state* law) (emphasis added).

However, the United States Supreme Court has created a counterpart to § 1983 so that individuals may bring a suit against a federal actor for violating a right guaranteed by the United States Constitution or federal law. See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971). Accordingly, the Court will construe the plaintiff's claims against the defendants as arising under Bivens.

### B. Defendant Howell

In order for a court to hear a case, the court must have subject matter jurisdiction over the claims and personal jurisdiction over the defendants. Here, the Court has subject matter jurisdiction

over the petitioner's claims because the petitioner alleges that his constitutional rights have been violated. See 28 U.S.C. §1331 ("the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). However, the Court clearly does not have personal jurisdiction over defendant Howell.[2]

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir.2001). The West Virginia long-arm statute, contained in W.Va. Code §56-3-33(a), provides:

> (a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:
>
> (1) Transacting any business in this state;

---

[2] Pursuant to 28 U.S.C. §1915, the Court can *sua sponte* raise the issue of personal jurisdiction. See Hall v. Herman, 896 F. Supp. 588, (N.D. W.Va. 1995).

(2) Contracting to supply services or things in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using or possessing real property in this state; or

(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

The United States District Court for the Southern District of West Virginia has aptly described personal jurisdiction under the West Virginia long-arm statute as follows:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry." In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir.1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the

> privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp. 2d 851, 854 (S.D. W.Va. 2004).

With regard to the actions of defendant Howell at USP-McCreary, the plaintiff has failed to assert any contact by this defendant with the state of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, based on the complaint, the Court cannot exercise personal jurisdiction over defendant Howell as any action he took appears to have occurred solely in Kentucky and not anywhere in West Virginia, and there is no indication that this defendant had any contact whatsoever with the State of West Virginia.

Consequently, the plaintiff's claims against defendant Howell should be dismissed as frivolous because the court lacks personal jurisdiction over this defendant. See Harris v. United States, 2002 WL 824277 (N.D. TX 2002)(unpublished).

**C. Exhaustion**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

In addition, although the exhaustion of administrative remedies should generally be raised by the defendant as an affirmative defense, Jones v. Bock, 127 S.Ct. 910, ___ U.S. ___ (2007), the court is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005).

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In ground three of the complaint, the plaintiff asserts that he attempted to exhaust his administrative remedies with regard to the claims raised in the complaint, but that his administrative

---

[3] Id.

remedies were ignored. Copies of the plaintiff's administrative remedies are attached to the complaint. A review of those documents shows that the only issues relevant to the complaint and raised by the plaintiff in his administrative remedies are his claims that he is being denied a segregation review hearing every thirty days (ground one) and his claim of discrimination (ground four).[4] Therefore, the issue raised in ground two of complaint (purposeful misclassification of inmates to avoid review hearings) must be dismissed for the failure to exhaust as it has never been raised in the administrative remedy process.

In addition, according to the attached remedy forms, the plaintiff's discrimination claim relates solely to the actions of defendant Howell, for which this court lacks personal jurisdiction. Therefore, the Court need not address that remedy in further detail. The only remaining claim that the plaintiff has attempted to exhaust is ground one, the plaintiff's claim that he is being denied a segregation review hearing every thirty days. However, that ground is clearly not exhausted and the plaintiff's futility argument is without merit.

On June 18, 2007, the plaintiff filed a request for administrative remedy with Warden Stine. In that request, the plaintiff asserted that he has been denied a segregation review hearing every

---

[4] The plaintiff provides the Court with copies of other administrative remedies, but the issues raised in those remedies are not relevant to the claims raised in the complaint. For example, in one request, the plaintiff seeks a copy of Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>. In response to the plaintiff's request, he was provided the pertinent parts of that Program Statement and told that the entire policy was available for review in the SHU law library. In another request, the plaintiff seeks information regarding the grounds for his continued housing in the SHU. In response, the plaintiff is told that he was placed in the SHU on administrative detention pending a threat assessment. In a third request, the plaintiff seeks the rescission of a written decision by Warden Stine of USP-McCreary which informs the plaintiff that holdover inmates are not entitled to classification program review. In the response, Warden Stine denies the plaintiff's requests and explains that holdover inmates are not subject to PS 5322.12 and therefore, not entitled to program reviews every thirty days. Therefore, the facts giving rise to this remedy occurred while the plaintiff was at USP-McCreary and any claim the plaintiff has is against Warden Stine. Clearly, this Court would not have personal jurisdiction over any such claims for reasons already explained in this Opinion.

thirty days in violation of PS 5270.07.  On July 12, 2007, the plaintiff's request was denied by Warden Stine.  The plaintiff appealed to the regional office on July 26, 2007.  It appears that the plaintiff's appeal was received by the Mid-Atlantic Regional Office on August 6, 2007.  Pursuant to 28 C.F.R. § 542.18, the regional office had 30 calendar days, or until September 5, 2007, to respond to the plaintiff's request.  The regional office also had the option of requesting a thirty-day extension.  See § 542.18.  If a response is not received in the time allotted, including extension, the inmate may consider the absence of a response to be a denial at that level.  Id.  Therefore, assuming that the plaintiff did not receive a response to his regional office appeal, the plaintiff's remedy could not be deemed denied until October 5, 2007.  The instant case, however, was filed on August 23, 2007.[5]  Because the plaintiff must exhaust his claims *prior to* filing suit, ground one is premature and should be dismissed for the failure to exhaust.

Moreover, even assuming that the regional office failed to respond to the plaintiff's appeal, that did not excuse the plaintiff from filing an appeal at the final level.  The plaintiff was still obliged to file an appeal of that denial with General Counsel.  General Counsel would then have 40 calendar days to respond.  An inmate may procedurally default his claims by failing to follow the proper procedures.  See Woodford v. Ngo, 126 S.Ct. 2378 (2006) (recognizing the PLRA provisions

---

[5] It is widely recognized among the circuits that administrative grievances are not "available" under 42 U.S.C. § 1997(e) when prison officials fail to timely respond to a properly filed grievance. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999); Johnson v. Henson, 2007 WL 135973 (E.D. Cal. Jan. 17, 2007).  Thus, those courts have determined that when prison officials fail to respond to properly filed grievances, exhaustion occurs. Therefore, the date the plaintiff filed the instant case is significant.  If he had filed the case after the passing of the appropriate response times, the petitioner may have had an argument that exhaustion had occurred.  However, by filing this case prior to that time, the plaintiff cannot now argue futility as he failed to provide the BOP sufficient time respond to his grievance before filing suit.  Accordingly, ground three of the instant complaint is without merit.

contain a procedural default component). Thus, ground one was never properly exhausted and is also due to be dismissed for that reason.

## V. Recommendation

For the reasons set forth herein, the undersigned makes the following recommendations:

(1) the plaintiff's claims under 42 U.S.C. § 1983 be **DENIED** and **DISMISSED with prejudice**;

(2) the plaintiff's claims be construed as arising under Bivens and be addressed accordingly;

(3) grounds one and two be **DISMISSED without prejudice** for the failure to exhaustion administrative remedies;

(4) ground three be **DENIED** and **DISMISSED with prejudice** for the failure to state a claim;

(5) ground four by **DENIED** and **DISMISSED with prejudice** for lack of personal jurisdiction over defendant Howell;

(6) the plaintiff's Motion to Revoke Certification (dckt. 11) and Motion to Supplement his claims (dckt. 12) be **DENIED**; and

(7) this case be **CLOSED** and **STRICKEN** from the Court's active docket.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver

of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: November 8, 2007.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE